1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

9

DEBRA J. THOMPSEN,

10          Plaintiff,                          NO. CV-08-230-RHW

11      v.

12  AARON S. BRESHEARS and                   **ORDER DENYING**
    JANE DOE BRESHEARS, husband              **DEFENDANT BRESHEARS'**
13  and wife, the CITY OF PULLMAN,           **MOTION FOR PARTIAL**
    a municipal corporation of the State     **SUMMARY JUDGMENT**
14  of Washington,

15          Defendants.

16

17          Before the Court is Defendant Breshears' Motion for Partial Summary

18  Judgment (Ct. Rec. 25).  A hearing was held on the motion on April 24, 2009.

19  Plaintiff was represented by James Sweetser.  Defendant Breshears was

20  represented by Stewart Estes.

21                          **PROCEDURAL HISTORY**

22          On June 13,2009, Plaintiff filed a complaint in Whitman County Superior

23  Court seeking damages and injunctive relief.  The underlying conduct for the claim

24  resulted from a traffic stop and subsequent arrest that occurred in Pullman,

25  Washington.  In her complaint, Plaintiff asserts state law claims of outrage,

26  negligence, false imprisonment, malicious prosecution, false arrest and unlawful

27  detention, respondeat superior against the City of Pullman, and alleges that her

28  civil and constitutional rights were violated during: (1) the arrest without probable

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  ~ 1**

cause; (2) the unlawfully prolonged detention; (3) the unreasonable search and seizure; (4) the use of excessive force; and (5) the violation of her privacy rights. Defendants removed the case to the Eastern District of Washington.[1]

Defendant Aaron Breshears, the officer who conducted the stop and arrest, now moves for partial summary judgment on the basis of qualified immunity.

### STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant

---

[1]The complaint originally asserted a claim against the State of Washington; however, these claims were dismissed, per the stipulation of the parties.

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2**

is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### BACKGROUND FACTS

The following facts are set forth in the light most favorable to Plaintiff, the non-moving party.[2]

Plaintiff is a partner in a property management company and works there as an employee. She manages over 1300 apartment units near the campus of Washington State University, and has worked cooperatively with the police on tenant issues and civic activities. As a result, Plaintiff is known by many of the Pullman Police Officers, including Officer Scott Kirk, who was involved in the traffic stop.

Plaintiff had put in a long day when she pulled out of the parking lot. She made a wide turn crossing a yellow line about a tire width, veered back to the right, straddled the white line that divides the southbound lanes at the intersection, slowly turned right at an intersection without fully stopping at a red light, and then turned into the farthest westbound land, rather than the nearest lane. This was all observed by Defendant Breshears, a police officer with the Pullman Police

---

[2]In responding to Defendant's Motion for Summary Judgment, Plaintiff failed to follow the directives of Local Rule 56.1, which states that "[a]ny party opposing a motion for summary judgment must file with its responsive memorandum a statement of specific facts that the opposing party asserts establishes a genuine issue of material fact precluding summary judgment." Although Plaintiff's failure to follow the Local Rules has made the analysis more difficult, the Court was able to review the pleadings and issue a ruling nonetheless. *See Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (recognizing that the proper administration of justice is better served by a deliberative decision than by default).

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3**

department.[3]  He flashed his lights, indicating that Plaintiff should pull over, which she did.

When she pulled to the right side of the road, she  parked on a sidewalk stopping in front of a fire lane access for the Providence Court Apartment Complex, where she had just exited.  Officer Breshears pulled up behind her, but did not ask her to move her car.  In talking with Breshears, Plaintiff stated that she did not know why she was being pulled over, was unaware of any double yellow line, and apologized, saying she just had a long day at work.

Breshears asked for her license, insurance, and current registration.  Plaintiff located her license and insurance information, but had trouble locating a current registration.  She had several registrations in her car and was unable to determine the current one, but she did not drop or fumble the paperwork.  While she was frantically searching through the paperwork, Breshears took the registration that she had in her hand, which was, in fact, the most current registration.  Breshears believed that the failure to find the registration indicated that Plaintiff was disoriented and possibly impaired.

Breshears told Plaintiff that she had been stopped because she pulled into the far lane too soon after turning onto Stadium Way from Valley Road, and that she had committed a "California" stop.  He asked her if she had been drinking.  She replied, "I do not drink."  He asked her if she took drugs or prescription drugs.  She said, "No."  There was no smell of intoxicating beverages, nor was there any odors suggesting marijuana use.  Plaintiff's speech was coherent and not slurred.

Breshears then told Plaintiff that her eyes were red and dilated.  Plaintiff told the officer that she had just put in a 14-hour day.  Breshears returned to his patrol

---

[3]On June 28, 2006, just one week before this incident, Defendant Breshears graduated from the Washington State Criminal Justice Training Commission Standard Field Sobriety testing.

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4**

car and radioed he was going to conduct a test on a suspected impaired driver. He then returned to Plaintiff's car.

     While Plaintiff was seated in her car, Breshears instructed Plaintiff to look at his pen and follow it with her eyes.[4]  He concluded there were abnormalities that would be consistent with the consumption of alcohol or drugs.

---

[4]This is commonly referred to as a HGN test.  *See State v. Baity*, 140 Wash.2d 1 (2000).  The HGN test was developed as part of the standard field sobriety test by the National Highway Traffic Safety Administration ("NHTSA"). *See United States v. Horn*, 185 F.Supp.2d 530, 535-37 (D. Md. 2002). In the HGN test, the driver is asked to focus his eyes on an object held by the officer at the driver's eye level.  *Id.*  As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking (nystagmus).  *Id. Horn* states that there is a well recognized, but by no means exclusive, causal connection between the ingestion of alcohol and the detectable presence of exaggerated horizontal gaze nystagmus in a person's eyes which may be judicially noticed by the court.  *Id.*  As *Horn* noted, nystagmus will always be present in the human eye, but certain conditions, including alcohol ingestion, can cause an exaggeration of nystagmus such that it is more readily observable.  *Id.*  By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation (90 degrees), and (3) onset of nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content exceeds the legal limit. *Id. Horn* notes that the three clues are performed for each eye and if the officer observes four or more clues, then the NHTSA manual asserts that it is likely that the suspect's BAC is above .10, and that by using this criteria one will be able to classify correctly about 77% of suspects with respect to whether their blood alcohol level is above 0.10.  *Id.*

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 5**

1  Breshears told Plaintiff that prescription drug driving was becoming a huge

2  problem and asked Plaintiff to step out of the car.  Plaintiff asked why, and

3  Breshears stated that her eyes looked dilated to him.  She again denied using

4  alcohol or drugs.  She stated that she would be extremely embarrassed to be seen in

5  front of the apartment complex where she worked, but Breshears stated that the test

6  would be performed quickly.

7  Officer Kirk and a trainee responded to the location just after Plaintiff was

8  asked to step out of her car.  Officer Kirk had a video camera and was able to

9  record the administering of the tests (although from a distance and without audio).[5]

10  Plaintiff voluntarily exited her vehicle, although she was scared and worried

11  about losing her license in case she declined.  Defendant asked Plaintiff about any

12  health problems that would prevent her from performing the tests, and Plaintiff

13  stated that she had problems with her hips.  Breshears then performed another

14  HGN test.  Plaintiff stated this test made her dizzy.

15  Breshears asked Plaintiff to perform another sobriety test and proceeded to

16  demonstrate the "walk and turn test."  Plaintiff hurried through the test.  Breshears

17  informed her she had to perform the test again because he had not indicated she

18  could start.  Plaintiff performed the test a second time.  According to Breshears,

19  she failed the test.  According to Plaintiff's expert, she passed the test both times.

20  Plaintiff was then asked to do the one-leg balance test.  She performed the

21  test while standing on an uneven grass surface that had a downward slope.  She

22  held her leg up for about 15 seconds.  As she was lowering her leg, Breshears

23  stated that he did not tell her to put her leg down, which frustrated Plaintiff.

24  Breshears shined the flashlight in her eyes and told Plaintiff that she would have to

25  do the leg test again.  She asked how much longer she had to be on the street.

26

27  [5]Apparently, the video camera in Officer Breshears car was not working on

28  the night in question.

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 6**

Breshears stated that she had done poorly and she needed to do the test again.  At this point, Plaintiff refused to perform any more testing.

Breshears informed Plaintiff that she would be arrested if she did not continue to perform the physical sobriety tests.  She again refused.  Breshears arrested Plaintiff, handcuffed her, and placed her in the back of his patrol car.  Breshears transported Plaintiff to the Pullman police station.

Once at the police station, Plaintiff consented to a breath test because she was informed that without her consent, her license could be suspended, revoked, or denied.  While performing the test, Officer Breshears noticed a brown film covering the back of Plaintiff's tongue.  After performing the PBT test, the result was 0.00, which confirmed that Plaintiff had not been drinking.

Defendant Breshears then reasoned, "I never smelled alcohol; it must be prescription drugs." He advised Plaintiff that he would take her to the hospital so she could give a blood sample for testing. Plaintiff inquired if she needed an attorney. Defendant replied that he could not give her legal advice.  Plaintiff thought that she had to do what he said to avoid being jailed.

Plaintiff requested that Defendant Breshears not place the cuffs too tight because her wrists were indented and had red marks.  Rather then loosen the cuffs, Defendant Breshears chose to use shackles.  Plaintiff was instructed to spread her legs, so Defendant Breshears could apply the shackles.  She was then transported to the hospital in shackles.  She was also led through the hospital in shackles.  Once she was at the nursing station, the shackles were removed.  After the blood was drawn, Plaintiff was transported back to the police station to be processed, including a mug shot, and finger printing.[6]

---

[6]According to Plaintiff's expert, the mug shot booking photo does not show that Plaintiff's pupils were constricted.  The photo was taken about 1 to 2 hours after the stop.

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 7**

1    Plaintiff's vehicle was searched incident to arrest. No drugs or other

2    evidence of alcohol were found in her vehicle. The lab results later confirmed no

3    use of drugs[7] and no charges were ever filed. The stop and subsequent arrest took

4    place between 9:15 p.m. and 9:45 p.m.

5    <center>**SECTION 1983 CLAIMS & QUALIFIED IMMUNITY**</center>

6    Section 1983 creates a cause of action against any person who, acting under

7    color of state law, violates the constitutional rights of another person. 42 U.S.C. §

8    1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101,

9    1106 (9th Cir. 2001). To succeed on a section 1983 claim, Plaintiffs must show that

10    (1) the conduct complained of was committed by a person acting under color of

11    state law; and (2) the conduct deprived him or her of a constitutional right. *Long v.*

12    *County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). A public official may

13    be immune from liability for acts performed in her official capacity under either the

14    doctrine of absolute immunity or qualified immunity. *Mabe*, 237 F.3d at 1106.

15    Generally, the "presumption is that qualified rather than absolute immunity is

16    sufficient to protect government officials in the exercise of their duties." *Antoine*

17    *v. Byers & Anderson, Inc.*, 508 U.S. 409, 433 n.4 (1993).

18    In *Saucier*, the Supreme Court mandated a two step sequence for resolving

19    qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, taken

20    in the light most favorable to the party asserting the injury, do the facts alleged

21    show that a constitutional right was violated. *Id* at 201. Second, if so, whether the

22    right was clearly established at the time of the defendant's alleged misconduct. *Id*

23    at 200. The dispositive inquiry in deciding whether the right was clearly

24    established, is whether it would be clear to a reasonable officer that his conduct

25    was unlawful in the situation he confronted. *Id* at 202. Recently, however, the

26    Supreme Court instructed that courts need not first determine whether facts alleged

27

28    _____

[7]The results indicated that caffeine and nicotine were present in her blood.

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ~ 8**

or shown by plaintiff make out violation of constitutional right. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). Rather, courts may exercise their sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances of the particular case at hand.

In determining immunity, the Court must accept the plaintiffs' allegations as true. *Buckley v. Fitzsimmons*, 509 U.S. 259, 261 (1993). The official seeking immunity bears the burden of demonstrating that immunity attaches to a particular function. *Burns v. Reed*, 500 U.S. 478, 486 (1991).

## ANALYSIS

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released.

*Baker v. McCollan*, 443 U.S. 137, 145 (1979).

Yet, the Fourth Amendment prohibits unreasonable seizures and arrests. This case represents the conflict between law enforcement's goals of deterring and detecting crimes, and a citizen's right to be free from unreasonable police conduct. Here, it is undisputed that Plaintiff was not driving while impaired by alcohol or drugs. This was proven by the subsequent blood test. It is not undisputed, however, whether Plaintiff was driving impaired. Indeed, her expert, Lance Platt opined that while Plaintiff appeared to display difficulty with her driving that could be consistent with someone who may be impaired, her conduct could also be consistent with someone who was in a hurry.

The irony is that while Breshears maintains that the totality of the circumstances was *highly* predictive that Plaintiff was driving while impaired from alcohol or drugs, the reality is these tests were, in fact, wrong. Plaintiff was not driving while impaired from alcohol or drugs. The question before this Court, however, is not whether Plaintiff was guilty as charged, but whether Plaintiff's constitutional rights were violated and if they were, whether these rights were clearly established.

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9**

**(1)    Whether Plaintiff's Constitutional Rights were Violated**

Here, there were a number of decisions and actions that were made by Breashers throughout the course of Plaintiff's detention and ultimate arrest. Each of these must be analyzed separately in order to determine whether Plaintiff's constitutional rights were violated.

**A.    Decision to Conduct Traffic Stop**

To justify an investigative stop, a police officer must have reasonable suspicion that a suspect is involved in criminal activity. *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002) (*citing United States v. Arvizu*, 534 U.S. 266, 275 (2002)). Reasonable suspicion is formed by specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person is engaged in criminal activity." *Id*. Officers are encouraged to draw upon their own specialized training and experience in assessing the totality of the circumstances. *Id*. Nevertheless, an officer's inferences forming the basis for suspecting that a person is involved in criminal activity must be grounded in objective facts and be capable of rational explanation in order for an investigatory stop of a suspect to be supported by reasonable suspicion. *Id*.

Defendant warns of the dangers of not stopping persons suspected of driving while impaired to justify his actions. However, this perceived danger should not be a license for officers to conduct sobriety tests and arrest people based merely on a hunch. The Court recognizes that there is a fine balance that police officers must walk between protecting the public from danger and protecting an individual's constitutional rights. Courts have given guidance to officers who walk this line by requiring reasonable suspicion before officers can conduct a traffic stop and requiring probable cause before a person can be arrested.

In his briefing, Breshears identifies three Washington statutes that he

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10**

believes were violated by Plaintiff: Wash. Rev. Code § 46.612.290(1)[8]; 46.61.140(1)[9]; and 46.61.055(3)(a)[10].  Plaintiff's own expert indicated that Plaintiff's driving could be consistent with someone who may be impaired.  The Court finds this particularly relevant in determining that there was reasonable suspicion to stop Plaintiff.  As such, Plaintiff's constitutional rights were not violated when Officer Breshears conducted the initial traffic stop.

### B.    The Decision to Conduct Field Sobriety Tests

Defendant conducted two separate field sobriety tests.  The first took place while Plaintiff was in her car shortly after Breshears stopped Plaintiff and the second took place after Breshears asked Plaintiff to step out of her vehicle.

### (1)    HGN Test

The scope of an officer's stop must be tailored to the underlying justification for that stop.  *United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir.2001), *amended by* 279 F.3d 1062 (9th Cir. 2002).  Thus, the stop must last no longer than necessary to effectuate the stop's purposes.  *United States v. Mondello*,

---

[8](1) Right turns. Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.

[9](1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

[10]3) Steady red indication
    (a) Vehicle operators facing a steady circular red signal alone shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection control area and shall remain standing until an indication to proceed is shown. However, the vehicle operators facing a steady circular red signal may, after stopping proceed to make a right turn from a one-way or two-way street into a two-way street or into a one-way street carrying traffic in the direction of the right turn; or a left turn from a one-way or two-way street into a one-way street carrying traffic in the direction of the left turn; unless a sign posted by competent authority prohibits such movement. Vehicle operators planning to make such turns shall remain stopped to allow other vehicles lawfully within or approaching the intersection control area to complete their movements.

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11**

927 F.2d 1463, 1471 (9th Cir. 1991).  Questions prolonging the detention must be "reasonably related in scope to the justification of [the] initiation," unless additional suspicious factors supported by reasonable suspicion justify a broadening of that scope.  *Muehler v. Mena*, 544 U.S. 93, 100-01 (2005).  Nevertheless, questioning outside the scope of the initial purpose of the stop does not constitute a seizure unless it unreasonably prolongs the detention.  *Id.*

Courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol in order to conduct a field sobriety test.  *See Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008); *Wilder v Turner*, 490 F.3d 810, 815 (10th Cir. 2007); *Rogala v. District of Columbia*, 161 F.3d 44, 52 (D.C. Cir. 1998).  Under the reasonable suspicion standard, a police officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).  A reasonable suspicion analysis is based upon the "totality of the circumstances," and "officers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations and internal quotation marks omitted).  "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274.

A lawful investigative stop may be converted into an unlawful arrest if conducted in a manner more instructive than is necessary to effectuate legitimate government interests.  *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990).  In determining whether an official detention has ripened into an arrest, the Court must consider the totality of the circumstances.  *Id.*  There has been an arrest if,

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12**

1  under the circumstances, a reasonable person would conclude that he or she was

2  not free to leave after brief questioning.  *Id.*

3      Defendant justifies the decision to conduct the field sobriety test on the

4  following factors: Plaintiff's fumbling with the registration, having blood shot and

5  dilated eyes, and the traffic violations, including the fact that after Plaintiff was

6  stopped, she pulled to the side of the road with both right tires on the sidewalk and

7  parked directly in front of a marked fire lane.[11]

8      Although this is a close call, the Court concludes there was reasonable

9  suspicion to conduct the HGN test.

10          (**2**)    **Field Sobriety Test**

11      After Breshears conducted the HGN test, he asked her if she drank any

12  alcohol or took any prescription medicines, to which Plaintiff replied no.

13  Breshears then asked Plaintiff to exit her vehicle to perform more field sobriety

14  tests.  Breshears did so because he believed that Plaintiff failed the HGN test.

15      Plaintiff's expert refutes the validity of the first HGN test.  Defendant has

16  failed to address how a person who is sober can fail a HGN test.  After hearing the

17  evidence, the jury can come to a number of conclusions—Defendant Breshears

18  properly administered the HGN test and Plaintiff failed it, Breshears negligently

19

20      [11]Defendant asserts that by parking on the sidewalk and in front of the fire

21  lane, she violated the following statutes:

22          (1) Except as otherwise provided in this section, every vehicle
    stopped or parked upon a two-way roadway shall be so stopped or
23  parked with the right-hand wheels parallel to and within twelve inches
    of the right-hand curb or as close as practicable to the right edge of the
24  right-hand shoulder.
25  Wash. Rev. Code § 46.61.575

26          (1) Except when necessary to avoid conflict with other traffic,
    or in compliance with law or the directions of a police officer or
27  official traffic control device, no person shall:
        (a) Stop, stand, or park a vehicle:
28          (x) At any place where official signs prohibit stopping.
    Wash. Rev. Code § 46.61.570.

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  ~ 13**

administered the HGN and Plaintiff failed it, Breshears intentionally administered the tests in a manner that would cause Plaintiff to fail it, or Breshears falsified the police reports and Plaintiff never failed the field sobriety tests.  In the first two scenarios, there would be no constitutional violation.  In the later two, the jury could find that Breshears violated Plaintiff's constitutional rights.[12]  As such, summary judgment is not appropriate.

Taking the facts in the light most favorable to Plaintiff, a reasonable jury could find that there was not reasonable suspicion to conduct the second field sobriety test and at that point, Plaintiff was being unreasonably detained.  As such, a reasonable jury could find that Plaintiff's constitutional rights were violated.

### C.    Decision to Arrest Plaintiff

Whether the arrest of Plaintiff was lawful depends on whether there was probable cause to support the arrest at that time.  *See Dubner v. City & County of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001).  Probable cause exists when, taking together the totality of circumstances known to the arresting officer, a prudent person would conclude that there was a fair probability that the arrested person committed a crime.  *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994).  If Defendant had probable cause, Plaintiff's arrest was lawful regardless of the officer's subjective motivation.  *Tatum v. City & County of S.F.*, 441 F.3d 1090, 1094 (9th Cir. 2006).

Plaintiff was arrested for Driving under the Influence of Intoxicating Liquor and/or Drugs.

Wash. Rev. Code § 46.61.502(1) provides:

(1) A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state:

(a) And the person has, within two hours after driving, an

---

[12]The jury can be properly instructed as to the nuances of whether a constitutional violation has occurred.

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 14**

alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood made under RCW 46.61.506; or
           (b) While the person is under the influence of or affected by intoxicating liquor or any drug; or
           (c) While the person is under the combined influence of or affected by intoxicating liquor and any drug.

Under Washington law, "it is not illegal to drink and drive; it is illegal to drink to the point it affects driving." *State v. Hansen*, 15 Wash. App. 95, 96 (1999). Nevertheless, proof of erratic driving is not required to convict of driving under the influence. *Id.* Notably, in *State v. Gillenwater*, the Washington courts acknowledged that mere evidence that a driver has had something to drink is insufficient to convict and "perhaps to establish probable cause." 96 Wash. App. 667, 671 ((1999). In that case, there was more—a cooler full of beer and three opened cans of beer were found in the car along with a strong order of alcohol on the driver. *Id.*

Defendant argues that at the time he placed Plaintiff under arrest, he had probable cause to arrest her for driving while intoxicated, based on the following factors: (1) Plaintiff's poor driving (7 traffic infractions); (2) fumbling of the registration and glassy eyes; (3) failure to pass certain phases of the field sobriety; and (4) her refusal to complete the tests administered by Defendant Breshears.

Plaintiff's expert refutes Breshears' conclusions that Plaintiff failed to pass certain phases of the field sobriety test. Again, the validity of the results of field sobriety tests and the veracity of Breshears have to be examined in light of the fact that Plaintiff was not under the influence of drugs or alcohol. A reasonable jury could find it likely that Plaintiff did not fail the tests. Plaintiff has suggested that the events as they unfolded could be attributable to an overzealous officer eager to apply the skills he had learned just a few weeks before. Based on this, a reasonable jury could question the veracity of Officer Breshears.

According to Breshears' declaration, he did not believe that Plaintiff had

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15**

1  been drinking.  Rather, he suspected that Plaintiff had taken prescription medicine.

2  However, blood shot eyes is not generally an indication of being under the

3  influence of prescription drugs.[13]  In most cases, it is an indication of alcohol use,[14]

4  but Breshears did not suspect Plaintiff of alcohol use.

5      Although it may not be a constitutional violation to administer the test in a

6  negligent way, a negligently performed test cannot be the basis for probable cause

7  to arrest someone for driving while under the influence.  *See  Strickland v. City of*

8  *Dothan, Alabama*, 399 F.Supp.2d 1275 (M.D. Ala 2005) ("It is imperative that

9

10      [13]According to the Washington State Patrol Drug Recognition Uniform

11  Guide, bloodshot, watery eyes could be an indication of inhalant use (such as

12  aerosols).  However, the pupils would be normal or dilated.

13      In his police report, Breshears stated that when he administered the HGN

14  test while Plaintiff was seated in her vehicle, she had very small pupils and they

15  did not react to the change in the light and did not return to normal size.  According

16  to the Washington State Patrol Drug Recognition Uniform Guide, constricted

17  pupils is a sign of a narcotic analgesics.  Even so, none of the other symptoms

18  associated with narcotic analgesics use–droopy eyelids, drowsiness, depressed

19  reflexes, low, raspy, slow speech, euphoria, fresh puncture marks, nausea, track

20  injection marks, lowered pulse–was reported to be present.

21      [14]*See City of College Place v. Staudenmaier*, 110 Wash. App. 841 (2002)

22  (defendant's breath smelled strongly of alcohol, his eyes were watery and

23  bloodshot);  *State v. Smith*, 130 Wash.2d 215 (1996) (defendant had strong odor of

24  intoxicants and eyes were bloodshot and watery); *State v. Lewellyn*, 78 Wash. App.

25  788 (1995) (defendant was weaving in and out of traffic, odor of alcohol, glassy

26  and bloodshot eyes, and poor performance on field sobriety tests); *Watkins v.*

27  *Department of Licensing*, 33 Wash.App. 853 (1983) (suspect ran a red light, and

28  had the odor of alcohol, watery eyes, slurred speech, and trouble standing).

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 16**

1 police officers–who are expected to interact with, and potentially arrest, individuals

2 who may be intoxicated-have correct knowledge of how to demonstrate and

3 interpret the field–sobriety tests on which the liberty of those individuals may

4 depend.  It is not objectively reasonable to rely on a performance in a field-sobriety

5 test for a finding of probable cause for a DUI arrest when the test has been

6 administered incompetently.”).

7      Here, the jury will have to make the determination whether Officer

8 Breshears negligently or intentionally administered the tests in a manner that

9 would provide the wrong results, or negligently or intentionally misinterpreted the

10 results of the test.[15]

11      If the Court were to accept Plaintiff's version of the facts and conclude that

12 she passed the field sobriety test, then the remaining undisputed fact proffered by

13 Defendant in support of a finding of probable cause for driving under the influence

14 are Plaintiff's poor driving, the fumbling of the registration, the watering and

15 bloodshot eyes, and her refusal to complete the tests administered by Defendant

16 Breshears.  The Court does not find that Plaintiff's poor driving would support a

17 finding of probable cause to arrest her for driving under the influence because

18 Defendant Breshears did not follow Plaintiff long enough to verify erratic

19 driving.[16]  Nor would the fact that she refused to complete the tests provide

20

21      [15]Again, the difference between these two standards can be set forth in the

22 jury instructions.

23      [16]*See United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002).  In that case,

24 the officer observed a car traveling 70 m.p.h. northbound in the right lane on the

25 interstate.  While the officer was watching the car, it drifted onto a solid white fog

26 line on the far side of the right lane for approximately ten seconds.  *Id*.  The officer

27 then observed the car drift to the left side of the left lane where its left wheels

28 traveled along the solid yellow line for approximately ten seconds.  *Id*.  The car

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL
SUMMARY JUDGMENT  ~ 17**

probable cause to arrest her for driving under the influence.  Under the totality of the circumstances, these factors would not provide probable cause to arrest Plaintiff for driving under the influence.

A reasonable jury could find that Plaintiff did not fail the field sobriety test. If so, the remaining undisputed facts would not support a finding of probable cause.  Thus, a reasonable jury could conclude that Plaintiff's constitutional rights were violated.

**D.    Decision to Search Plaintiff**

It appears that Plaintiff is asserting an illegal search and seizure claim. While not clear, it appears that Plaintiff is asserting that the administration of the

---

then returned to the center of the lane, signaled a lane change, and moved to the right lane. *Id*.  The officer pulled the car over for possible violation of traffic code for lane straddling  and driving under the influence.  *Id*.  The Circuit held that touching a dividing lane, even if a small portion of the body of the car veers into a neighboring lane, satisfies the traffic code, but conversely held there was not reasonable suspicion to stop the car for a possible violation of driving under the influence  *Id*. at 444.   Notably, the Circuit made the following observation:

> Although we recognize that in some cases evidence of weaving might be indicative of driving under the influence, we disagree that the evidence in this case was sufficient for Carmichael to harbor a reasonable suspicion that Estrada-Nava was driving under the influence, thus justifying the stop. Carmichael testified that he observed Estrada-Nava and Colin's vehicle for 35-45 seconds before pulling it over, and that during this time, Estrada-Nava drove within the speed limit and properly activated his turn signals before making lane changes. Carmichael thought Estrada-Nava was "possibly" driving under the influence because the car's wheels touched the fog line on the right side of the right lane for 10 seconds and then, about 5-10 seconds later, touched the yellow line on the far left of the left lane for another 10 seconds.

*Id.*, *see also Amundsen v. Jones*, 533 F.3d 1192, 1199 (10th Cir. 2008); *United States v. Lyons*, 7 F.3d 973, 976 (10th Cir.1993) ("Indeed, if failure to follow a perfect vector down the highway or keeping one's eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of privacy."), *overruled on other grounds by United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995).

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 18**

1   blood test violated her constitutional rights.

2       The Fourth Amendment's proper function is to constrain, not against all

3   intrusions as such, but against intrusions that are not justified in the circumstances,

4   or that are made in an improper manner.  *Schmerber v. California*, 384 U.S. 757,

5   768 (1966).  The interest in human dignity and privacy which the Fourth

6   Amendment protects forbid any such intrusions on the mere chance that desired

7   evidence might be obtained.  *Id.* at 771.  Extraction of blood samples for testing is

8   a highly effective means of determining the degree to which a person is under the

9   influence of alcohol.  *Id.*  Such tests are common and experience with them teaches

10  that the quantity of blood extracted is minimal, and that for most people, the

11  procedure involves virtually no risk, trauma, or pain. *Id.*

12      The *Schmerber* defendant had been convicted of driving under the influence

13  of intoxicating liquor.  *Id.* at 758.  The Supreme Court held that evidence of

14  defendant's blood taken over his objection by a physician while petitioner was in

15  the hospital, after being arrested, was admissible as it did not violate the

16  constitution.  *Id.* The Supreme Court found that the test was performed in a

17  reasonable matter as it was made by a physician in a hospital environment, and

18  according to medical practices.  *Id.*

19      The constitutionality of a search is assessed by balancing the need for the

20  particular search against the invasion of personal rights that the search entails. *Way*

21  *v. County of Ventura*, 445 F.3d 1157, 1160 (9th Cir. 2006). The Court has to weigh

22  the scope of the particular intrusion, the manner in which it is conducted, the

23  justification for initiating it, and the place in which it is conducted. *Id.*

24      Defendant justifies the blood test under the Washington implied consent law,

25  which states:

26      (1) Any person who operates a motor vehicle within this state is
        deemed to have given consent, subject to the provisions of RCW
27      46.61.506, to a test or tests of his or her breath or blood for the
        purpose of determining the alcohol concentration or presence of any
28      drug in his or her breath or blood if arrested for any offense where, at

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 19**

the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug or was in violation of RCW 46.61.503. Neither consent nor this section precludes a police officer from obtaining a search warrant for a person's breath or blood.

Wash. Rev. Code § 46.20.308.

To trigger the implied consent statute, there must be both a valid arrest and reasonable grounds for the arresting officer to believe that the driver was driving under the influence at the time of the arrest. *Washington v. Avery,* 103 Wash. App. 627 (2000). "[I]f the officer has reasonable grounds to believe the driver was under the influence of drugs, a blood test is permissible." *Id*. The probable cause standard is the appropriate standard to analyze whether reasonable grounds exists under the statute. *Id*. at 232.

Here, the jury is going to have to determine whether there was a valid arrest and whether there was reasonable grounds for Breshears to believe that Plaintiff was driving under the influence at the time of her arrest. As set forth above, when viewing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find that neither of these two conditions were met. As such, a reasonable jury could find that Plaintiff's constitutional rights were violated when she was subjected to a blood test.

### (2)    Whether the Law was Clearly Established

The Court has concluded that jury questions exist regarding whether Plaintiff's constitutional rights were violated. As *Saucier* and *Pearson* teaches us, however, this is not the dispositive inquiry.

Qualified immunity is available if a reasonable officer could have believed that his or her conduct was lawful, in light of clearly established law and the information the officer possessed. *Blankenhorn v. City of Orange*, 485 F.3d 463, 476 (9th Cir. 2007). "Whether a right is 'clearly established' for purposes of qualified immunity is an inquiry that 'must be undertaken in light of the specific

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 20**

context of the case, not as a broad general proposition.' In other words, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Graves v. City of Coeur d'Alene*, 339 F.3d 828, 846 (9th Cir.2003) (*quoting Saucier*, 533 U.S. at 201-02) (other citation omitted).

Here, the Court finds that it was clearly established that reasonable suspicion must exist in order for an officer to prolong a traffic stop to conduct a field sobriety test. Here, there is a question of fact as to what Breshears knew and how he chose to justify his decision to detain Plaintiff. Moreover, it is clearly established that probable cause must exist in order to arrest someone for driving under the influence of drugs or alcohol. A reasonable officer would know that if a person passed a field sobriety test, more than likely there would not be probable cause to arrest. Finally, it is clearly established that before an officer can request that blood be drawn pursuant to the implied consent statute, there must be reasonable grounds to conclude that a suspect was driving under the influence. As such, Defendant Breshears is not entitled to qualified immunity.

## E.    Conclusion

When viewing the facts in the light most favorable to Plaintiff, the non-moving party, the Court concludes that a reasonable jury could find that Defendant Breshears violated Plaintiff's constitutional rights. Moreover, the Court finds that Defendant Breshears is not entitled to qualified immunity. As such, summary judgment in favor of Defendant Breshears is not appropriate.

///
///
///
///
///

Accordingly, **IT IS HEREBY ORDERED**:

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 21**

1.      Defendant's Motion for Partial Summary Judgment (Ct. Rec. 25)  is **DENIED**.

**IT IS SO ORDERED**.  The District Court Executive is directed to enter this Order and forward copies to counsel.

DATED this 14th  day of August, 2009.


*s/Robert H. Whaley*

ROBERT H. WHALEY
Senior United States District Judge

Q:\CIVIL\2008\Thompsen\sj.ord3.wpd

**ORDER DENYING DEFENDANT BRESHEARS' MOTION FOR PARTIAL SUMMARY JUDGMENT  ~ 22**